

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00312-CV

SCC PARTNERS, INC. D/B/A                                    APPELLANTS
SENIOR CARE HEALTH AND
REHABILITATION CENTER -
BRIDGEPORT; AND
FOURSQUARE HEALTHCARE,
LTD. F/K/A SCC HEALTHCARE
GROUP

V.

BILLY ROBERT INCE,                                         APPELLEE
INDIVIDUALLY AND AS A
REPRESENTATIVE OF THE
ESTATE OF NORECCA "JOY"
INCE, DECEASED

----------

## FROM THE 271ST DISTRICT COURT OF WISE COUNTY
## TRIAL COURT NO. CV14-04-225

----------

## OPINION

----------

Appellants—SCC Partners, Inc. d/b/a Senior Care Health and

Rehabilitation Center - Bridgeport and Foursquare Healthcare, Ltd. f/k/a SCC

Healthcare Group (Providers)—bring a single issue in this interlocutory appeal from an order denying their motion to dismiss[1] in a healthcare liability case:  that the trial court erred by denying their motion after overruling their objections to the expert report filed by appellee Billy Robert Ince.  We affirm.

Ince's wife Joy resided at Senior Care Bridgeport's nursing facility for almost a year before her death on April 27, 2012.  Joy died six days after being admitted to a different hospital and receiving a diagnosis of gram negative septicemia, gram negative sepsis, and acute myeloid leukemia.  After Joy died, Ince filed a wrongful death and survival suit alleging that Providers had been negligent in caring for her and that their negligence caused her predeath injuries, including pain and suffering, and eventually her death.  Ince timely filed an expert report by Dr. E. Rawson Griffin, III, to which Providers objected, contending that Dr. Griffin was not qualified to render an opinion "regarding cancer or oncology" and that his opinion regarding causation was ambiguous and conclusory.  Providers state in their objections, "While [Dr. Griffin's opinion as to causation of pain and suffering from Joy's injuries] may be sufficient to address [Ince's] survival claim, it does not address causation as to the wrongful death claim."  After a hearing, the trial court denied Providers' motion to dismiss.

---

[1]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West Supp. 2015).

## Health Care Liability Claims

A health care liability claimant is required to serve a defendant with an expert report and curriculum vitae of the report's author within 120 days of filing the claim. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West Supp. 2015). The report must be written by an expert competent to give an opinion on the matters in the report, must inform the defendant of the specific conduct called into question, and must provide a basis for the trial court to determine that the claim has merit. *Id.* §§ 74.351(r)(5)(B), (r)(6), 74.402 (West Supp. 2015); *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). If the defendant files a motion challenging the adequacy of the expert report, the court shall grant the motion only if it appears to the court that the report does not represent a good faith effort to comply with the statutory requirements. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*). We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Columbia N. Hills Hosp. Subsidiary, L.P. v. Alvarez*, 382 S.W.3d 619, 623–24 (Tex. App.—Fort Worth 2012, no pet.).

### *Certified EMS, Inc. v. Potts*

Although Providers argue that even if Dr. Griffin's report is sufficient as to Ince's survival claim it is not sufficient as to his wrongful death claim, at oral argument they clarified that they had not conceded that the report was sufficient as to the survival claim. Ince responds that because Providers' objections should be overruled, at least as to the survival claim, under *Certified EMS, Inc. v. Potts*,

he need not show that the report is independently sufficient as to the wrongful death claim, and none of the claims are subject to dismissal. 392 S.W.3d 625, 626 (Tex. 2013).

In *Certified EMS*, a patient sued a hospital raising direct and vicarious liability theories of negligence after a nurse employed by a staffing service allegedly assaulted her. *Id.* Potts timely served expert reports from a doctor and a nurse, but Certified EMS objected to the reports on the ground that neither referenced its potential direct liability as alleged by Potts. *Id.* at 627. Citing a split in the courts of appeals, the supreme court held that the Texas Medical Liability Act does not require an expert report to address each alleged theory of liability and that a report that satisfies the Act's requirements "even if as to one theory only, entitles the claimant to proceed with a suit against the physician or health care provider." *Id.* at 630.

Providers contend that the holding in *Certified EMS* is limited to direct and vicarious liability theories of negligence against a party and not different causes of actions with separate injuries. We do not construe the holding in *Certified EMS* so narrowly. The El Paso Court of Appeals has agreed. *See Tenet Hosps. Ltd. v. Bernal*, 482 S.W.3d 165, 171–72 (Tex. App.—El Paso 2015, no pet.) (holding, after concluding that report was insufficient as to causation on survival claim, that "[t]his does not necessarily mean that plaintiffs' survival claims fail" and, citing *Certified EMS*, addressing adequacy of report provided for wrongful

4

death claims).[2]  In *Certified EMS*, the supreme court rejected the lower court's reasoning that the statute's use of the phrase "cause of action" is dispositive and, thus, that the focus of a dismissal motion is the operative set of facts leading to various theories of liability within a cause of action.  392 S.W.3d at 630 (citing 355 S.W.3d 683, 690–92 (Tex. App.—Houston [1st Dist.] 2011) (op. on reh'g) ("By focusing on a cause of action rather than particular liability theories that may be contained within a cause of action, the plain language establishes that the entire cause of action is dismissed with respect to the defendant when the claimant has failed to file an expert report that sets out at least one liability theory within a cause of action.")).  Instead, the supreme court held that a report that satisfies the statutory elements, "even if as to one theory only," is sufficient to avoid dismissal of an entire case.  *Id.* at 630–31 ("If the trial court decides that *a* liability theory is supported, then the claim is not frivolous, and the suit may proceed." (emphasis added)).  This is consistent with the goal of avoiding frivolous suits:  if at least one alleged claim, theory, or cause of action in a health care liability suit has expert support, then the legislative intent of deterring frivolous suits has been satisfied.  *See id.* at 631.  Carving out causes of action,

---

[2]As Providers point out, the court of appeals reversed in *Bernal* and remanded for the trial court to consider a thirty-day extension, but not, as Providers urge, because the plaintiff was required to produce an expert opinion on both the wrongful death and survival claims but because the plaintiff failed to provide an adequate expert opinion as to causation under either theory.  *Tenet Hosps. Ltd. v. Bernal*, 482 S.W.3d 165, 171, 175 (Tex. App.—El Paso 2015, no pet.).

i.e., alternative "theories of liability," at the beginning of the suit before discovery has occurred would be akin to requiring a plaintiff to meet the summary judgment standard of proof. *See id.* (citing *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001)).

Accordingly, we conclude and hold that if the expert report served by Ince satisfies the statutory requirements as to either his alleged wrongful death or survival claims, then the trial court did not abuse its discretion by denying Providers' motion to dismiss. *See id.* at 630–31.

**Qualifications**[3]

An expert report concerning standards of care for health care providers must be authored by one who qualifies as an expert. Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351(r)(5)(B), 74.402; *Davisson v. Nicholson*, 310 S.W.3d 543, 550 (Tex. App.—Fort Worth 2010, no pet.) (op. on reh'g). A person may qualify as an expert on the issue of whether a health care provider departed from accepted standards of care only if the person

> (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

---

[3]Although Providers do not discuss their challenge to Dr. Griffin's qualifications in the argument of their issue, they do repeat their trial court objections to his qualifications elsewhere in their brief; thus, we will address that complaint in an abundance of caution.

6

(2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b). Persons practicing health care include those serving as consultants while being licensed, certified, or registered in the same field as the health care provider. *Id.* § 74.402(a)(2). A person is qualified on the basis of training or experience if he is certified by a state or national professional certifying agency or has substantial experience in the field and is actively practicing health care services relevant to the claim. *Id.* § 74.402(c). To determine whether the author of a report is qualified, we may look only at the four corners of the report and the author's curriculum vitae. *Barber v. Mercer*, 303 S.W.3d 786, 794 (Tex. App.—Fort Worth 2009, no pet.) (citing *Palacios*, 46 S.W.3d at 878).

Providers argued in their motion to dismiss that Dr. Griffin is not qualified to render an opinion excluding leukemia as an alternative cause of Joy's death because his report does not establish that he has specialized knowledge or training in oncology. Ince responded that Dr. Griffin's curriculum vitae shows that he is qualified because he "regularly treats patients with conditions almost identical to [Joy's]" and he opined solely that Providers' negligence, which led to the development of Joy's pressure sore, was a contributing factor in her death, not that their negligence caused her leukemia.

7

Pertinent to his qualifications, Dr. Griffin stated in his expert report,

I am a practicing physician licensed by the States of Florida, Georgia and Virginia. I received my M.D. Degree from Medical University of South Carolina, Charleston, South Carolina, and interned at Tripler Army Medical Center, Honolulu, HI. I completed my residency at Martin Army Hospital, Ft. Benning, Georgia. I currently hold a certificate of added qualification in geriatrics and I was a certified director of long-term care facilities for 6 years in the past. I am also board certified in family medicine. I served as Director of Geriatric Services, Tandem Skilled Nursing Facility in Orange Park, Florida in 1998 and from 1999–2001. I was Attending Staff in Family Practice and Geriatrics at Orange Park Medical Center in Orange Park, Florida from 1985–2015. I was Director of Rehabilitation Services at Cedar Hills SNF in Jacksonville, Florida from 2005–2012. I served as a Consultant in Geriatric Neuropsychiatry at Holly Point Manor Skilled Nursing Home in Orange Park, Florida in 1998. I served as Associate Medical Director at Consultec SNF in Orange Park, Florida from 2006–2012. I was Medical Director at Health Ex Rehabilitation in Orange Park, Florida from 2004–2006. I was also the Medical Consultant for Long Term Care at Community Hospice in Jacksonville, Florida from 2006–2012. I was credentialed as an expert witness in Family Practice and Geriatrics with the Florida Board of Medicine, Tallahassee, Florida from 1991–2015. At the time of the occurrence of this case, I was actively engaged in the practice of geriatrics. I continue to practice actively in this specialty as of this date. I have attached a copy of my current CV, which is incorporated in this report by this reference.

In the regular course of my medical practice I have had occasion to diagnose and treat patients with conditions similar to or identical to those affecting [Joy]. Specifically, during the course of my career I've provided medical care to thousands of patients in hospitals, nursing homes and assisted living facilities. I have provided care to patients who, like [Joy], were suffering from type II Diabetes, congestive heart failure, coronary artery disease, hypertension, hyperlipidemia, gastroesophageal reflux disease, arthritis, COPD, cellulitis, depression, atherosclerosis, abnormal liver study, impetigo, spondylosis and Myocardial Infarction, and Vitamin D Deficiency. I have written orders for the care and treatment of those patients and have supervised the execution of these orders by RN[']s[,] LVN's[,] and CNA's who were assigned to provide the

8

hands-on care to my patients. These orders included orders for the prevention and treatment of pressure ulcers. As my CV shows I am a published author on pressure ulcers. I am therefore intimately familiar with the standards of care for the facilities involved in this claim as well as the RN[']s, LVN's and CNA's who provid[ed] care to [Joy].

. . . .

It is my opinion that the failures set forth above were the proximate cause of [Joy's] injuries. It is my opinion that to a reasonable degree of medical probability, had Defendants, and each of them, provided a safe environment for [Joy], prevented her from developing pressure ulcers, [Joy's] life would not have been subject to pain and suffering leading up to her death from said pressure ulcer. In addition had proper wound care protocols been in place which provided for arterial and vascular studies to identify vascular lesions that could have been repaired she more likely than not would not have been subject to pain and suffering from her lower extremity wound resulting in an improved quality of life as a result of requiring lower doses of pain medication.

Specifically, when prolonged pressure, i.e. longer than two hours is present only [sic] body part and this pressure exceeds approximately 32 mmHg, the capillaries are compressed and the blood flow to the affected part is shut off. Capillaries are the smallest vessels that connect the arteries and the veins. Capillaries have very thin walls and it is through the walls of these tiny blood vessels that oxygen and nutrients pass into the surrounding tissue to be utilized. All living tissue in the body requires oxygen and nutrients to stay alive and to function. When the tissues are deprived of blood flow, oxygen and nutrients, then the death of tissue occurs, the medical term for this is necrosis, and in layman's terms, the tissue simply dies and decays. This is precisely what happened in this case. Unrelieved pressure on a capillary is just like placing one's foot on a garden hose, compressing it, and shutting off the flow. This is what happened in [Joy's] case: her capillaries were compressed; the blood flow was shut off from the tissues; the tissues died and became necrotic or decayed. This is one process by which pressure ulcers become larger and this is what happened in this case.

9

The conduct called into question is the failure by [Providers] to prevent [Joy] from developing pressure ulcers, maintain clinical records and provide [her] with a safe environment. Defendants, and each of them, breached the standard of care by allowing [Joy to] develop[] a stage III pressure ulcer on her coccyx that became necrotic. It is abundantly clear that Defendants failed to maintain clinical records, because there is no mention of [Joy] ever having a pressure ulcer on her coccyx until it was found during her hospitalization. Had Defendants, and each of them, not breached the standards of care as defined herein, it is my opinion that to a reasonable degree of medical certainty, [Joy] would not have been subjected to pain and suffering leading up to her death.

Ince alleged in his original petition that Providers breached their duty of care in the following ways:

a. Failing to observe, intervene, and care for [Joy];

b. Neglecting [Joy] to such a degree that she suffered multiple illnesses, pressure ulcers and death;

c. Failing to provide the medical and nursing care reasonably required for [Joy's] known conditions[; and]

d. Failing to provide the appropriate supervision and training to its staff and personnel that were providing care to [Joy] including appropriate care related to [her] wound treatment needs at all relevant times.

He further alleged that Joy "would have been entitled to bring a suit for damages had she lived" and sought damages for past physical pain, mental anguish, disfigurement, and physical impairment.

Dr. Griffin's statements that he has treated thousands of patients with conditions similar to Joy's before her death, that he is familiar with the standard of care involved in treating those patients, that he has given orders for the treatment of patients in similar situations and supervised nurses in that treatment,

10

and that he is a published author regarding pressure ulcers are sufficient to show his qualifications to opine regarding Ince's claim that Providers were allegedly negligent in their treatment of Joy as it relates to the development of the pressure ulcer. *See Mem'l Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 759 (Tex. App.—Houston [14th Dist.] 2007, no pet). Accordingly, we conclude and hold that the trial court did not abuse its discretion by denying Providers' motion to dismiss as to their complaint regarding Dr. Griffin's qualifications.

**Causation**

Providers also complained that Dr. Griffin's report was inadequate on the issue of causation. Their specific arguments in the trial court were that Dr. Griffin did not rule out leukemia as the cause of Joy's death and that any statement that the pressure sore caused her death as opposed to her other injuries is ambiguous and conclusory. However, in their brief Providers argue that Dr. Griffin did not adequately explain how Joy's pressure ulcer was not inevitable considering that she showed signs of skin deterioration on admittance to the Senior Care Bridgeport facility or how Providers' alleged breach of the standard of care caused the pressure ulcer to develop. Because Providers raised the report's alleged failure to address Joy's existing skin deterioration in their objections even though they did not articulate the complaint in the same way as they do on appeal, we will nevertheless review it. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a); Tex. R. App. P. 33.1(a); *G.T. Leach Builders, LLC v. Sapphire V.P., L.P.*, 458 S.W.3d 502, 517 n.12 (Tex. 2015).

An expert is required to link his or her conclusions to the facts, but no "magical words" are required. *Bowie Mem'l Hosp.*, 79 S.W.3d at 53. Dr. Griffin's report (1) explains how pressure ulcers form, (2) notes that Providers' medical records do not show that they followed any pressure ulcer prevention program while Joy was a resident and that, immediately upon her arrival at the hospital from Providers' facility, the pressure sore was found by the hospital staff, and (3) states that the failure to monitor and identify "fixable" lesions results in greater pain and suffering to patients and that Providers' failure to provide such identification and monitoring "more likely than not" subjected Joy to greater pain and suffering, necessitating higher doses of pain medication. We conclude and hold that Dr. Griffin's report is therefore sufficient on the issue of causation of Joy's alleged injuries related to the pressure ulcer. *See, e.g., Select Specialty Hosp.-Houston Ltd. P'ship v. Simmons*, No. 01-12-00658-CV, 2013 WL 3877696, at *11 (Tex. App.—Houston [1st Dist.] July 25, 2013, no pet.) (mem. op.); *Alexander v. Terrell*, No. 09-07-198-CV, 2007 WL 2683536, at *3–4 (Tex. App.—Beaumont Sept. 13, 2007, no pet.) (mem. op.); *Gallardo v. Ugarte*, 145 S.W.3d 272, 280 (Tex. App.—El Paso 2004, pet. denied).

Accordingly, we overrule Providers' sole issue and affirm the trial court's order denying Providers' motion to dismiss.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and MEIER, JJ.

DELIVERED:  June 2, 2016