

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-17-00147-CV

---

COLUMBIA MEDICAL CENTER OF
ARLINGTON SUBSIDIARY L.P.
AKA/DBA MEDICAL CENTER OF
ARLINGTON

APPELLANT

V.

L.M.

APPELLEE

----------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 096-284523-16

----------

## MEMORANDUM OPINION[1]

----------

In this case involving alleged sexual misconduct by a nurse against a patient, Columbia Medical Center of Arlington Subsidiary L.P. d/b/a Medical Center of Arlington (MCA) brings an interlocutory appeal from the trial court's April 11, 2017 order overruling its motion objecting to the patient L.M.'s revised

---

[1]*See* Tex. R. App. P. 47.4.

expert report and seeking dismissal of L.M.'s claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West Supp. 2017), § 74.351(b)(2) (West 2017). MCA contends in a single issue that the trial court erred (1) by granting L.M. an extension to cure deficiencies in her original expert report because it was so lacking in substance that it was no report at all, (2) by overruling its objections to L.M.'s original report and a revised report that she timely filed after the extension, and (3) by "denying [its] motions to dismiss." Because we conclude that L.M.'s original proffered report was deficient but curable and that L.M.'s revised expert report is not deficient, we affirm the trial court's denial of MCA's second motion to dismiss.

## I. Background Facts And Procedural History

L.M. sued nurse Gerald Thomas Cagle, Staff Quest Plus, his staffing agency employer, and MCA for common law negligence and health care liability under chapter 74 of the Texas Civil Practice and Remedies Code. L.M. alleged that after she went to MCA's emergency room complaining only of chest pain, Cagle––without obtaining a doctor's order and without following established protocol or policy—performed an unnecessary invasive catheterization (an "in-and-out" catheterization) and after doing so, performed an unnecessary and also unordered digital vaginal examination.[2] L.M. alleged that MCA was vicariously

---

[2]L.M. also claimed that Cagle rubbed and patted her buttocks after giving her an injection and massaged her shoulders and back while smelling her hair.

2

liable for Cagle's conduct and that it had negligently trained, instructed, and supervised Cagle.

L.M. timely filed documents purporting to constitute an expert report: a transcript of sworn testimony during a Texas Board of Nursing hearing by nurse Denise Benbow concerning Cagle's conduct; Benbow's curriculum vitae (CV); an administrative law judge's (ALJ) recommendation to the Board that Cagle's license be revoked; and an opinion and order of the Board revoking Cagle's license prepared by nurse Katherine A. Thomas. MCA objected to the documents on numerous grounds, including that the documents constituted either no report at all or a deficient report, and filed a motion to dismiss alleging the same grounds it raised in its objections. At a hearing on its objections and motion, MCA's counsel argued, "[A]ll they've done is they've pieced together documents from Nurse Cagle's Texas Board of Nursing ALJ hearing and have attempted to repurpose same as an expert report." Instead of ruling at the hearing, the trial court took the matter under advisement.

Three weeks later, on October 26, 2016, the trial court signed an order finding that "the expert report [was] deficient" and granting L.M. a thirty-day extension to cure the deficiencies. *See id.* § 74.351(c), (r)(6). The order did not expressly deny the motion to dismiss. MCA did not appeal from this order.

L.M. timely filed a "Revised Chapter 74 Expert Report," which included a "Medical Review Report" by Dr. Lola Lumpkins along with her CV. MCA objected to Dr. Lumpkins's expert report on the grounds that her causation opinion is

3

conclusory and that she improperly relied on the causation opinions of Benbow, Thomas, and the ALJ instead of making an independent causation determination. MCA also again sought dismissal based on Dr. Lumpkins's allegedly-deficient expert opinion. MCA alternatively argued in this second motion to dismiss that the trial court should have granted its first motion to dismiss because the documents L.M. originally filed constituted no report at all; thus, the trial court erred by granting L.M. a thirty-day extension. After a hearing, the trial court overruled MCA's objections to Dr. Lumpkins's expert report and denied MCA's second motion to dismiss. MCA appealed.

## II. Complaints On Appeal

In a single issue, MCA raises the following complaints:

- the documents L.M. originally served did not constitute a "'written report' providing a 'fair summary' of an expert's opinions on the standards of care, breach, and causation particular to this lawsuit";

- even if the documents could be considered an expert report, they were so deficient that they were no report at all because (a) they did not contain a physician's causation opinion, (b) Benbow, Thomas, and the ALJ are not qualified to opine about the standard of care and breach, and (c) even if they are qualified, their opinions about the standard of care and breach are conclusory;

- Dr. Lumpkins's report is deficient as to L.M.'s vicarious liability claim because her causation opinion is conclusory and she improperly relied

4

on Benbow's, Thomas's, and the ALJ's causation opinions contained in the first proffered report; and

- because Dr. Lumpkins's report is deficient as to vicarious liability and because neither the original report nor Dr. Lumpkins's report addressed any direct liability claims against MCA, L.M. failed to file an adequate expert report on any of her claims.

Because L.M. has not argued in this court or the trial court that her allegations against MCA do not fall within chapter 74's scope, we will review only whether the trial court abused its discretion by denying MCA's second motion to dismiss under section 74.351's applicable law. *See, e.g.*, *Loaisiga v. Cerda*, 379 S.W.3d 248, 257 (Tex. 2012) (setting out three-part test for rebutting presumption that claim against health care provider is a section 74.351 health care liability claim); *Murphy v. Russell*, 167 S.W.3d 835, 838–39 (Tex. 2005) (holding that medical battery claim required expert report under former article 4590i because expert testimony necessary regarding whether health care provider had any reasons for performing unconsented-to procedure that did not breach standard of care); *T.C. v. Kayass*, No. 02-16-00248-CV, 2017 WL 5180773, at *2, *6 (Tex. App.—Fort Worth Nov. 9, 2017, no pet.) (holding that claim against doctor for alleged sexual assault of mother during her children's appointment was not a health care liability claim for which an expert report must be filed); *Appell v. Muguerza*, 329 S.W.3d 104, 109–13 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (concluding that part of claim sounding only in assault was not a health

5

care liability claim for which an expert report is required but also citing cases holding that alleged sexual assaults of patients during course of medical examination were inseparable from rendition of medical care), *abrogated in part on other grounds by Tex. W. Oaks Hosp. v. Williams*, 371 S.W.3d 171, 184–86 (Tex. 2012); *Vanderwerff v. Beathard*, 239 S.W.3d 406, 409 (Tex. App.—Dallas 2007, no pet.) (concluding that expert report was required in claim that chiropractor sexually touched patient during examination when expert testimony was necessary to establish proper standard of care for examination for patient's particular complaint).

We review a trial court's denial of a motion to dismiss under section 74.351(b) for an abuse of discretion. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *Low*, 221 S.W.3d at 620; *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995).

6

### III. L.M.'s First Report Was Deficient But Curable

MCA's issue on appeal includes several complaints related to its alternative argument in its second motion to dismiss: that the documents L.M. filed as her original expert report were so deficient that they constituted no report at all and that the trial court therefore erred by extending the time for her to file a report to correct the deficiencies. A complaint that a report is so deficient that it is tantamount to no report at all is immediately appealable upon the trial court's denial of a motion to dismiss raising that ground even if the plaintiff has already filed an amended report in accordance with an order extending the time to do so. *See Scoresby v. Santillan*, 346 S.W.3d 546, 555, 557 (Tex. 2011); *In re Watkins*, 279 S.W.3d 633, 634 (Tex. 2009) (orig. proceeding); *Badiga v. Lopez*, 274 S.W.3d 681, 684–85 (Tex. 2009); *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 51.014(a)(9), 74.351(b). Here, the trial court's October 26, 2016 order found the documents L.M. served as her first report deficient and granted L.M. thirty days to file a new report but did not expressly rule on the first motion to dismiss.[3] Thus, we will consider the "no report" alternative argument MCA raised in its second motion to dismiss, which the trial court expressly ruled on. *See Scoresby*, 346 S.W.3d at 557; *Badiga*, 274 S.W.3d at 682, 685.

---

[3]Although MCA argues in its brief that the trial court abused its discretion by denying both of its motions to dismiss, the trial court's first order did not expressly rule on MCA's first motion to dismiss, and MCA's notice of appeal states that it is appealing the denial of the second motion to dismiss.

The supreme court has held that a document filed as an expert report under section 74.351 need only meet the following standards to be considered a deficient but curable report: (1) the plaintiff must serve the document purporting to be a report by the statutory deadline, (2) the report must contain an opinion of an individual with expertise that the claim has merit, and (3) the report must implicate the defendant's conduct. *Scoresby*, 346 S.W.3d at 557. Although MCA cites *Scoresby* in its brief, its arguments are not directed at the *Scoresby* test; rather, MCA focuses on whether the documents L.M. filed as her first expert report meet all of the statutory requirements for an expert report. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5), (6). We will follow *Scoresby*. 346 S.W.3d at 557–58 (recognizing that three-part test is a "minimal standard" that is "necessary if multiple interlocutory appeals are to be avoided" and should serve to "eliminate the first, wasteful appeal").

**A. L.M. Timely Filed Report**

L.M. filed the Nursing Board documents ninety-two days after MCA filed its original answer; thus, she satisfied the first standard. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).

**B. Benbow Is An Individual With Expertise**

L.M. met the second standard with the CV and testimony of Denise Benbow, a licensed registered nurse since 1984 with a Master's degree in nursing. At the time Benbow testified in Cagle's Nursing Board disciplinary hearing, the Board employed her as a nursing consultant. Over her thirty-two

8

year career, Benbow had worked in medical centers and hospitals as a general-surgical floor nurse, staff and medication nurse, staff cardiology nurse, nurse manager of a post-operative and orthopedic unit, and staff nurse on the telemetry floor. In her work on the telemetry floor, Benbow had "much experience" with in-and-out catheterizations, and she provided a detailed procedure for how to do one properly.[4] She had also served for two years as an adjunct faculty member for nursing students at Austin Community College where she "assisted with skills lab on campus and directed student's [sic] clinical experiences with pre and post clinical conferences on 6th floor Seton Medical Center (orthopedic, neurological, and urological patients)." As a Nursing Board consultant, she served as an expert witness at the State Office of Administrative Hearings. She also (1) answered questions about the Nursing Practice Act, the Board's rules, the scope of nursing practice, and nursing peer review, (2) held webinars on nursing-related topics, such as medication safety and professional boundaries, and (3) wrote articles for the Board's bulletin.

MCA contends that the Nursing Board documents do not contain the opinion of an individual with expertise because they are not in the form of a

---

[4] *See Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 461 n.37 (Tex. 2017) (concluding that trial court could have properly determined that registered nurse who had previously worked in labor and delivery unit but who, at the time of providing an expert report, was working in hematology and oncology was qualified to opine on the standard of care for a registered nurse in a labor and delivery unit because section 74.351 "does not require an expert to have the same specialty as the health care provider she evaluates").

formally authored written report signed by Benbow and because Benbow is not qualified to give standard of care, breach, and causation opinions. But *Scoresby* does not require a formally authored, signed report,[5] nor does it require that the "individual with expertise" be qualified as an expert under chapter 74. *Compare id.* § 74.351(r)(5), *with Scoresby*, 346 S.W.3d at 557 ("The dissent argues that [the individual] was not qualified to give an opinion about the Physicians' conduct . . . . We express no view on the adequacy of [the individual's] qualifications; the trial court did not specifically address the matter, and it is premature for us to consider it."). *Scoresby* squarely held that an individual with expertise need not meet the chapter 74 qualification standards because a lack of qualification is a deficiency that can be cured. *See Scoresby*, 346 S.W.3d at 557; *Gower v. Univ. Behavioral Health of Denton*, No. 02-16-00245-CV, 2017 WL 3081153, at *9–12 (Tex. App.—Fort Worth July 20, 2017, no pet.) (mem. op.); *Koutsoufis v. Pinnacle Health Facilities GP V*, No. 02-16-00150-CV, 2017 WL 370956, at *6 n.4 (Tex. App.—Fort Worth Jan. 26, 2017, no pet.) (mem. op.).

Unlike the plaintiff in *Scoresby,* L.M. provided not only Benbow's testimony but also her CV detailing her thirty-plus-year career in nursing, which included

---

[5]*Maxwell v. Seifert*, upon which MCA relies, is an intermediate appellate court opinion issued before the supreme court decided *Scoresby*. 237 S.W.3d 423, 427 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Moreover, *Maxwell* is inapposite because in that case the plaintiff did not even attempt to timely serve documents purporting to be an expert report, relying instead on bulk medical records she produced in discovery that only showed "her physician's contemporaneous observations, diagnosis and treatment" and did not include any attempted statement of a standard of care or probable cause. *Id.* at 427.

10

testifying as an expert in disciplinary proceedings against other nurses, advising nurses on compliance with applicable regulatory standards, and teaching prospective nurses during clinical settings with urological patients. Thus, regardless of whether she was qualified as an expert under chapter 74, she is "an individual with expertise" under the *Scoresby* test. *See Nexion Health at Garland, Inc. v. Treybig*, No. 05-14-00498-CV, 2014 WL 7499373, at *7 (Tex. App.—Dallas Dec. 31, 2014, no pet.) (mem. op.); *HealthSouth of Houston, Inc. v. Parks*, No. 09-12-00213-CV, 2012 WL 4471224, at *2 (Tex. App.—Beaumont Sept. 27, 2012, pet. denied) (mem. op.); *Rosemond v. Al-Lahiq*, 362 S.W.3d 830, 833–35, 840 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *see also Select Specialty Hospital-Houston Ltd. P'ship v. Simmons*, No. 01-12-00658-CV, 2013 WL 3877696, at *5 n.2 (Tex. App.—Houston [1st Dist.] July 25, 2013, no pet.) (mem. op.) (holding that licensed registered nurse consultant—who stated that she was currently consulting with practicing registered nurses on many topics, including the prevention and treatment of wounds and pressure ulcers— was qualified to provide expert report on nurses' alleged failure to properly treat pressure ulcers); *Certified EMS, Inc. v. Potts*, 355 S.W.3d 683, 689–90 (Tex. App.—Houston [1st Dist.] 2011) (holding that nurse who served as consultant and expert witness, and who also worked as quality review nurse for Department of Aging and Disability Services, was qualified under civil practice and remedies code section 74.402(b) to provide expert report in case involving nurse's alleged sexual assault of hospital patient), *aff'd on other grounds*, 392 S.W.3d 625, 626,

11

633 (2013). Because the trial court could have properly determined that Benbow is an individual with expertise, we need not determine whether Thomas or the ALJ could also be considered individuals with expertise. *See* Tex. R. App. P. 47.1.

## C. Benbow's Testimony Includes Opinion That L.M.'s Claim Has Merit And Implicates Cagle's Conduct

MCA claims that Benbow did not opine that L.M.'s health care liability claim has merit because her Nursing Board testimony focused solely on Cagle's violation of the Nursing Practice Act and associated administrative rules rather than the breach of a medical standard of care.[6] Additionally, MCA contends that none of L.M.'s documents addressed any suit or health care liability claim L.M. had against MCA. But L.M.'s vicarious liability claims against MCA are based on her claims against Cagle. Thus, we will review L.M.'s allegations against Cagle individually.

L.M.'s claims against Cagle included allegations that his negligence and negligence per se violated the Nursing Practice Act. Specifically, L.M. claimed that

---

[6]MCA also contends that in the absence of an opinion from a person qualified to opine on causation, the documents are tantamount to "no report." But that is not the standard *Scoresby* articulated. 346 S.W.3d at 557 ("*All deficiencies*, whether in the expert's opinions or qualifications, are subject to being cured before an appeal may be taken from the trial court's refusal to dismiss the case." (emphasis added)).

12

- Cagle was negligent "with respect to the safe, prudent and proper administration of nursing procedures for a patient complaining of simple chest pains in an ER setting";

- Cagle's "independent and arbitrary diagnoses and responsive/invasive vaginal procedures (in the absence of specific physician orders to address said diagnoses) went far beyond the scope of his authority and nursing practice"; and

- Cagle committed "misconduct in violating professional boundaries and in engaging in sexual conduct with a patient/committing a sexual assault upon [L.M.] while administering medical care at the hospital."

L.M. also claimed that Cagle violated subsections (b)(10) and (13) of Texas Occupations Code section 301.452 and eleven separate sections of the Standards for Nursing Practice set forth in the Texas Administrative Code. *See* Tex. Occ. Code Ann. § 301.452(b)(10), (13) (West Supp. 2017) (providing that nurse is subject to disciplinary action for unprofessional conduct likely to deceive, defraud, or injure a patient or the public, for failing to adequately care for a patient, or for failing to conform to minimum standards of acceptable nursing practice that in Nursing Board's opinion exposes a patient or other person unnecessarily to risk of harm).

Benbow testified that Cagle violated the Nursing Practice Act because performing the catheterization without a doctor's order involved making a medical diagnosis and prescribing therapeutic or corrective measures, which is beyond

13

the scope of what Texas law permits a nurse to do. *See id.* §§ 151.002(a)(13), 301.002(2), 301.004(b), (West Supp. 2017); *Methodist Hosp. v. German*, 369 S.W.3d 333, 341–42 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). In addition, Benbow referred to MCA's departmental notes, which stated that catheterization to obtain a culture or perform diagnostic tests should be avoided if the patient can voluntarily void; according to Benbow, nothing in L.M.'s records indicated she could not voluntarily void. Benbow opined that those same departmental notes indicate that an in-and-out catheterization is not appropriate for chest pain, L.M.'s only complaint that day. Benbow further testified that based on L.M.'s testimony at the Board hearing about what Cagle did to her, Cagle had violated Board rules about unprofessional conduct that endangers a patient's safety, concluding that L.M.'s testimony that she had experienced nightmares showed that Cagle's actions caused L.M. at least "some harm." Thus, Benbow (1) set forth the standard of care—when an in-and-out catheterization should and should not be performed and that a nurse should not sexually assault a patient, (2) opined that Cagle breached that standard of care by performing the catheterization without a doctor's order and in the absence of symptoms indicating it was necessary and by sexually assaulting L.M.,[7] and (3)

---

[7]*See Murphy*, 167 S.W.3d at 838–39 (explaining need for expert report in medical battery case regarding whether adequate reasons exist for performing procedure without patient's consent but noting that although expert opinion is required in report, it will not necessarily be required at trial, depending on facts learned during discovery).

14

opined that L.M. suffered some harm: nightmares. Benbow therefore opined that L.M.'s negligence claim has merit and implicated Cagle's conduct. *See, e.g.*, *Gower*, 2017 WL 3081153, at \*4, \*11; *Alsup v. Hickory Trail Hosp.*, No. 05-16-00527-CV, 2017 WL 1046769, at \*8 (Tex. App.—Dallas Mar. 20, 2017, no pet.) (mem. op.); *Matagorda Nursing & Rehabilitation Ctr., L.L.C. v. Brooks*, No. 13-16-00266-CV, 2017 WL 127867, at \*1, \*7 (Tex. App.—Corpus Christi Jan. 12, 2017, no pet.) (mem. op.); *RJ Meridian Care of Alice, Ltd. v. Robledo*, No. 04-14-00195-CV, 2014 WL 2917669, at \*1–2 (Tex. App.—San Antonio June 25, 2014, no pet.) (mem. op.); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (West 2017) ("'Health care liability claim' means a cause of action against a health care provider or physician for treatment, lack of treatment, or *other claimed departure from accepted standards of . . . safety or professional or administrative services directly related to health care*." (emphasis added)).

We conclude that the documents L.M. first proffered as her expert report meet the *Scoresby* standard for a deficient but curable report. Our conclusion comports with the purpose of section 74.351, which the legislature primarily designed "to eliminate frivolous healthcare-liability claims, not potentially meritorious ones." *See Hebner v. Reddy*, 498 S.W.3d 37, 39 (Tex. 2016); *see also Scoresby*, 346 S.W.3d at 557 (recognizing that three-part test is "a minimal standard" but also appropriate and "necessary if multiple interlocutory appeals are to be avoided").

To the extent that MCA's briefing includes complaints about statutory deficiencies in the documents L.M. proffered as her first expert report, we need not address those complaints because Dr. Lumpkins's report superseded L.M.'s first report. *See, e.g.*, *Sison v. Andrew M.*, No. 02-16-00129-CV, 2017 WL 3974356, at *10 (Tex. App.—Fort Worth Sept. 7, 2017, pet. filed) (mem. op.) (citing *Cornejo v. Hilgers*, 446 S.W.3d 113, 124 n.11 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *HealthSouth Corp. v. Searcy*, 228 S.W.3d 907, 909 (Tex. App.—Dallas 2007, no pet.)).

## IV. Dr. Lumpkins's Expert Report

In the remainder of its only issue, MCA contends that Dr. Lumpkins's report is deficient because (a) her opinion on causation is conclusory, (b) she improperly relied on Benbow's, Thomas's, and the ALJ's causation opinions, and (c) she failed to address any direct liability claims against MCA that would cure the deficiencies in her report as to vicarious liability based on Cagle's conduct.

### A. Applicable Law

Section 74.351 requires that an expert report provide a fair summary of the expert's opinions regarding the causal relationship between the defendant's failure to meet the applicable standards of care and the injury, harm, or damages claimed by the plaintiff. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *see Gower*, 2017 WL 3081153, at *6. Because the purpose of a chapter 74 expert report is to inform the defendant of the specific conduct that the plaintiff has called into question and to provide a basis for the trial court to conclude that the

16

plaintiff's claims have merit, the report must contain sufficiently specific information to demonstrate causation beyond mere conjecture. *See Pedro v. Lake*, No. 02-16-00487-CV, 2017 WL 4296446, at *2 (Tex. App.—Fort Worth Sept. 28, 2017, no pet.). The expert report cannot establish the causal relationship by merely making conclusory statements. *Palacios*, 46 S.W.3d at 879; *Tex. Health Harris Methodist Hosp. Fort Worth v. Biggers*, No. 02-12-00486-CV, 02-13-00040-CV, 2013 WL 5517887, at *7 (Tex. App.—Fort Worth Oct. 3, 2013, no pet.) (mem. op.). The expert report, however, does not need to "marshal all the plaintiff's proof," nor must it use "magical words like 'reasonable probability.'" *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52–53 (Tex. 2002). And nothing in section 74.351 "suggests the preliminary report is required to rule out every possible cause of the injury, harm, or damages claimed." *Keller SNF v. Koutsoufis*, No. 02-16-00227-CV, 2017 WL 117318, at *8 (Tex. App.—Fort Worth Jan. 12, 2017, no pet.).

The sufficiency of the expert report's causation statement should be viewed in the context of the entire report. *Columbia N. Hills Hosp. Subsidiary, L.P. v. Gonzales*, No. 02-16-00433-CV, 2017 WL 2375770, at *6 (Tex. App.—Fort Worth June 1, 2017, no pet.) (mem. op.). Furthermore, the detail needed to establish a causal link generally is proportional to the complexity of the negligent act giving rise to the claim. *See, e.g.*, *Mendez-Martinez v. Carmona*, 510 S.W.3d 600, 609 (Tex. App.—El Paso 2016, no pet.) ("While plaintiffs need not drill down into every possible detail in every case in order to survive dismissal, a report in a

17

case alleging negligence in the context of a complex surgery involving multiple doctors and nurses, for example, will necessarily require more details than a report dealing with more straightforward negligence allegations.").

## B. Causation Opinion Not Conclusory

After detailing the nursing standard of care and breach of that standard, Dr. Lumpkins ends her report in a section titled "Harm to the Patient":

> I am also in agreement with the Opinion of Order of the Texas Board of Nursing that Nurse Cagle's conduct and breaches of the standard of care as I have discussed above resulted in harm to the patient. Nurse Cagle's actions during his nursing care of [L.M.] in patting her buttocks, reaching across her body to massage her back, smelling her hair, undressing her, putting his fingers in her vagina and/or performing an unnecessary and unordered invasive catheterization caused this patient physical pain and distress. [L.M.] also suffered actual harm by way of psychological trauma (i.e., nightmares) and lack of trust in medical personnel.

Looking at Dr. Lumpkins's causation statement in the context of her entire report, we conclude that she sufficiently established a causal link between Cagle's alleged breach of the standard of care and the harm to L.M. After explaining the standard of care—that a nurse should not catheterize a patient without a physician's order or unless the patient appears to be unable to voluntarily void and that a nurse should never make inappropriate sexual contact with a patient—and describing in detail how Cagle breached that standard of care by unnecessarily performing an invasive catheterization on L.M. and touching and digitally penetrating her, Dr. Lumpkins concluded that the physical

pain and distress of which L.M. complained, as well as her nightmares and distrust of medical personnel, were the result of Cagle's actions.

Dr. Lumpkins's causation opinion is not conclusory simply because it is not complex. *See Ranelle v. Beavers*, No. 02-08-00437-CV, 2009 WL 1176445, at *3–6 (Tex. App.—Fort Worth Apr. 30, 2009, no pet.) (mem. op.) (concluding that expert's causation opinion was adequate as to claims for medical battery and negligent performance of unnecessary surgery when expert opined that surgeon's breach of standard of care—failing to tell patient the truth about his condition and need for surgery—caused patient to suffer the pain and other attendant consequences of surgery). We hold that Dr. Lumpkins's causation opinion is not conclusory. *See Gracy Woods I Nursing Home v. Mahan*, 520 S.W.3d 171, 190 (Tex. App.—Austin 2017, no pet.) (holding, in direct liability nursing home sexual assault case, that expert's opinion that failure to conduct hallway monitoring or place patient closer to nurses station resulted in a sexual assault that left patient tearful and afraid was not conclusory); *SCC Partners, Inc. v. Ince*, 496 S.W.3d 111, 118 (Tex. App.—Fort Worth 2016, pet. dism'd) (determining that causation opinion that failure to identify and monitor fixable pressure sores more likely than not resulted in patient's greater pain and suffering was sufficient); *Thomas v. Desrochers*, No. 04-09-00487-CV, 2009 WL 4981323, at *3 (Tex. App.—San Antonio Dec. 23, 2009, pet. denied) (mem. op.) (concluding that causation opinion—that unnecessary procedure led to

19

improperly placed stent, which caused scarring and led to complaints set forth in petition—was sufficient).

## C. Reference To Benbow's, Thomas's, And ALJ's Determinations Not Improper

MCA also contends that Dr. Lumpkins improperly relied on Benbow's, Thomas's, and the ALJ's unqualified causation opinions in forming her expert opinion.

Courts have held that rule of evidence 703 allows a reporting physician to rely on the opinions of others—including nurses—who have rendered reports or diagnoses in forming that physician's own causation opinion so long as the physician has shown her own qualifications related to her specific experience with the condition involved. Tex. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."); *Sims v. Kemmerling*, No. 09-12-00338-CV, 2013 WL 1189091, at *2 (Tex. App.—Beaumont Mar. 21, 2013, no pet.) (mem. op.); *Kelly v. Rendon*, 255 S.W.3d 665, 676 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("While a nurse's report, standing alone, is inadequate to meet the requirements of the statute as to medical causation, nothing in the health care liability statute prohibits an otherwise qualified physician from relying on a nurse's report in the formation of the physician's own opinion."); *Cresthaven*

*Nursing Residence v. Freeman*, 134 S.W.3d 214, 234 (Tex. App.—Amarillo 2003, no pet.); *cf. Packard v. Guerra*, 252 S.W.3d 511, 532–33 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (holding that physician could rely on expert report of attorney explaining corporate structure of defendants to assist in addressing the standard of care, breach, and causation applicable to each defendant).

Nothing in the record shows that Dr. Lumpkins relied solely on the opinions expressed by the nurses and ALJ in the Board documents to form her causation opinion rather than forming her own causation opinion in accordance with her qualifications, which MCA has not challenged. She stated that her opinion was "in agreement with" the Board documents, not that she substituted the opinions expressed in those documents for her own. In addition to the Board documents, Dr. Lumpkins also relied on MCA's medical records, L.M.'s sworn testimony, and L.M.'s original petition. Thus, we hold that the record does not show that Dr. Lumpkins improperly substituted the opinions expressed in the Board documents for her own causation opinion.

## D. Direct Liability Claims Against MCA

MCA finally contends that because Dr. Lumpkins's report does not address any direct liability claims against it, the trial court should have dismissed L.M.'s suit. This argument presumes Dr. Lumpkins's report is deficient to support L.M.'s vicarious liability theory.

Not only have we determined that Dr. Lumpkins's report in support of L.M.'s vicarious liability claim is not deficient—and therefore that the trial court did not abuse its discretion by denying MCA's motion to dismiss—the supreme court of Texas has clarified that when a health care liability claim involves either a purely vicarious claim or a claim raises both vicarious and direct liability theories, "an expert report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements." *Certified EMS*, 392 S.W.3d at 632; *see also Koutsoufis*, 2017 WL 370956, at *5; *Ince*, 496 S.W.3d at 114–15. Because Dr. Lumpkins's report is sufficient to implicate MCA's liability under the vicarious liability theory L.M. pleaded, Dr. Lumpkins need not have opined on any direct liability theory. *See Certified EMS*, 392 S.W.3d at 632.

## V. Conclusion

We overrule MCA's sole issue and affirm the trial court's order denying MCA's second motion to dismiss.

/s/ Charles Bleil
CHARLES BLEIL
JUSTICE

22

PANEL:  WALKER and PITTMAN, JJ.; CHARLES BLEIL (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  March 1, 2018