Lowry SCHAUB, M.D. and Kevin Crawford, M.D., Petitioners,

v.

Janie SANCHEZ and Kenneth Adams, Spouse, Respondents.

No. 06–0375.

Supreme Court of Texas.

June 22, 2007.

Rehearing Denied Aug. 24, 2007.

R. Brent Cooper, Diana L. Faust, Heather Jean Reynolds Johnson, William Joel Akins, Cooper & Scully, P.C., Dallas, Jim Hund, Linda Ruth St. Clair Russell, Hund & Harriger, LLP, Benjamin H. Davidson II, Jeannie Nelson Marrow, McClesky Harriger, Brazill & Graf, L.L.P., Lubbock, for Petitioners.

Richard N. Countiss, Countiss Law Firm, Houston, Todd Michael Hurd, Shotts, Hurd & Ziegler, L.L.P., Lubbock, Amy K. Witherite, Eberstein & Witherite, L.L.P., James Michael Rauer, Dallas, for Respondents.

PER CURIAM.

In this health care liability case, we render a take-nothing judgment because the only theories under which the patient could recover were dismissed by agreed order in the trial court.

Janie Sanchez sued Doctors Lowry Schaub and Kevin Crawford for failing to obtain her informed consent to perform a stellate ganglion block—a spinal injection that anesthetizes a collection of nerves in the patient's neck. By agreed order, the trial court dismissed with prejudice Sanchez's other malpractice-related claims, leaving only her claim that the doctors "failed to obtain informed consent with regard to the stellate ganglion block." The trial court granted summary judgment in favor of the doctors on grounds that Sanchez had signed forms consenting to the procedure.

The court of appeals reversed, holding that the forms, which did not give specific

consent to a stellate ganglion block, incorporated recognized common-law duties regarding informed consent. *Janie Sanchez and Kenneth Adams v. Lowry Schaub, M.D. and Kevin Crawford, M.D.*, 184 S.W.3d 901, 903–04 (Tex.App.-Amarillo 2006). It reasoned that performing the procedure to which Sanchez had verbally objected might have deviated from accepted medical practices, thus raising a fact issue regarding Sanchez's consent. The court of appeals concluded that the trial court should have proceeded to trial to hear testimony on accepted medical practices in these circumstances. We reverse the court of appeals' judgment because the summary judgment record conclusively negates Sanchez's informed consent claim.

Doctor Crawford operated on Sanchez's broken wrist in December 1999. Afterwards, Sanchez experienced pain, numbness, and tingling in the hand. Crawford recommended a stellate ganglion block. Two blocks were performed, but they were ineffective. Sanchez told Crawford that she did not want another block performed. Crawford recommended a wrist manipulation procedure as an alternative to another block. Before the wrist manipulation, Sanchez signed two consent forms, one at Crawford's office a few days before surgery, and the other on the day of surgery. Doctor Schaub, an anesthesiologist, assisted with the surgery, which was performed under general anesthesia. The doctors testified that during the surgery, they saw signs of an acute flare-up of Sanchez's reflex sympathetic dystrophy, a condition of stiffness and swelling of the hand that can cause severe post-operative pain, inhibited movement, and reduced benefits from surgery. The doctors determined that another block would mitigate these symptoms, so they performed a third block. Sanchez presented some evidence that performing the block while she was unconscious deviated from the accepted medical standard of care. As a result of this third block, Sanchez developed an infection, resulting in spinal surgery.

■ Sanchez's informed consent claim is governed by section 6.02 of former article 4590i, now codified as section 74.101 of the Civil Practice and Remedies Code. Former section 6.02 provides:

> In a suit against a physician or health care provider involving a health care liability claim that is based on the failure of the physician or health care provider to disclose or adequately to disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.[1]

Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2048 (as amended) (current version at Tex. Civ. Prac. & Rem.Code § 74.101). Under this statute, Sanchez can prevail on her informed consent claim only if she shows that the doctors negligently failed to disclose the procedure's risks or hazards.

■ Sanchez argues that because she opted for wrist manipulation rather than another block, and had earlier informed Dr. Crawford that she did not want any more block injections, she refused consent to the block. Thus, she argues, her lack of consent supports a claim for lack of informed consent. But under section 6.02, lack of informed consent is a particular subspecies of negligence based on a failure to disclose the risks or hazards of a procedure. *See Barclay v. Campbell*, 704 S.W.2d 8, 9–10 (Tex.1986) (reversing directed verdict in favor of physician where

1. Section 74.101 of the Civil Practice and Remedies Code is identical.

the plaintiff presented evidence of a lack of informed consent by showing that the complained-of condition was a risk inherent to the procedure performed and that the risk could influence a reasonable person's decision to consent to the procedure).

Sanchez, however, does not complain that she was unaware of the risks or hazards of the block. To the contrary, she was fully aware of the risks, having twice undergone the procedure. As she stated in her summary judgment affidavit, "I was informed of the danger of the treatment." Sanchez verbally objected to a third block, but an action for total lack of consent sounds in battery or negligence—claims that Sanchez agreed to dismiss—not *informed* consent under section 6.02. *See Murphy v. Russell,* 167 S.W.3d 835, 838 (Tex.2005) (stating that failure to obtain a patient's consent to treatment can give rise to a cause of action for battery); *Binur v. Jacobo,* 135 S.W.3d 646, 655–56 (Tex.2004) (explaining that misdiagnosis and mistreatment might constitute negligence, but do not give rise to a claim for lack of informed consent); *Miller v. HCA, Inc.,* 118 S.W.3d 758, 767 (Tex.2003) ("[T]he general rule in Texas is that a physician who provides treatment without consent commits a battery."). Moreover, the court of appeals' suggestion that a doctor's deviation from accepted medical standards falls outside the scope of the patient's consent would mean that every negligence claim is likewise an informed consent claim. *See* 184 S.W.3d 901, 904. This result is inconsistent with the statutory definition of informed consent.

Finally, there is the fact that Sanchez, subsequent to her earlier verbal objections to a third block, consented in writing to "different procedures than those planned" and "any anesthesia deemed advisable" by Dr. Schaub, and acknowledged that "the anesthesia may have to be changed possibly without explanation to me[.]" Even if we agree with Sanchez that her earlier objection was not superseded by these two later-signed consent forms, performing a procedure without her consent—again, a claim Sanchez agreed to drop—is not the same as performing it without her *informed* consent, defined narrowly as "failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent." Given the statute's plain language, the summary judgment evidence cannot support a claim that the doctors failed to obtain Sanchez's informed consent.

Accordingly, we reverse the court of appeals' judgment and, without hearing oral argument, render a judgment that Sanchez take nothing. *See* Tex.R.App. P. 59.1; 60.2(c).

JUSTICE JOHNSON did not participate in the decision.