**Affirmed and Memorandum Opinion filed October 25, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00117-CV

## MOHSEN SHAHPOURI ARANI, M.D., Appellant

## V.

## RONNIE J. FISHER, CLAUDIA M. GRAETER, KEVIN D. FISHER, AND LOU ELLEN BEASLEY, INDIVIDUALLY AND AS HEIRS AND PERSONAL REPRESENTATIVE OF THE ESTATE OF MAGGIE JACKSON, Appellees

### On Appeal from the 129th District Court
### Harris County, Texas
### Trial Court Cause No. 2016-60520

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, a physician challenges the trial court's denial of his motion to dismiss under the Texas Medical Liability Act ("TMLA").[1] The

---

[1] The TMLA is codified at Chapter 74 of the Texas Civil Practice and Remedies Code. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 864-82 (codified at Tex. Civ. Prac. & Rem. Code ch. 74).

physician contends that the trial court was required to dismiss the plaintiffs' claims against him because the plaintiffs' expert report was inadequate to establish causation. Because we conclude that the expert's conclusions regarding causation are sufficient, we affirm the trial court's ruling. As all dispositive issues are settled in law, we issue this memorandum opinion. Tex. R. App. P. 47.4.

## Background

According to appellees' original petition, Maggie Jackson presented to a hospital in Tomball, Texas, complaining of shortness of breath. Dr. Mohsen Arani, an oncologist, admitted Jackson for evaluation of her white blood cell count. Appellees claim that Dr. Arani instructed hospital staff to perform a bone marrow biopsy on Jackson and to administer to Jackson "a highly toxic drug" for treatment of leukemia.[2] Further, appellees allege that Dr. Arani instructed staff to administer the drug multiple times without obtaining Jackson's consent or informed consent. Jackson died approximately one week later.

Appellees, as heirs and personal representatives of Jackson's estate, sued Tomball Texas Hospital and Dr. Arani for negligence. Appellees timely served a report from Dr. Harris VK Naina, a practicing clinician and oncologist. Dr. Naina opined that Dr. Arani breached the standard of care, which required Dr. Arani to obtain informed consent from Jackson before administering Hydrea. Further, in Dr. Naina's opinion, Dr. Arani's failure to obtain informed consent, followed by the administration of Hydrea, probably led Jackson to develop tumor lysis syndrome, heart block, and kidney failure, which ultimately caused her death.

Dr. Arani objected to Dr. Naina's report as deficient and moved to dismiss

---

[2] Appellees allege that hospital staff administered Hydrea (hydroxyurea), an oral chemotherapy drug.

2

appellees' claims against him under the TMLA. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b). Specifically, Dr. Arani contended that Dr. Naina's report was inadequate regarding causation because: (1) it failed to state that a reasonable person would have refused to take Hydrea to reduce white blood cell count; and (2) it failed to explain how the failure to disclose the risks of Hydrea changed Jackson's outcome.

Appellees filed a response, in which they argued among other things that Dr. Arani's objections and motion applied only the standard for informed consent cases, which was an incorrect standard. Appellees noted that they also alleged Jackson was administered Hydrea without any consent at all and, therefore, the standard for no consent cases applied, citing this court's opinion in *McGraw-Wall v. Giardino*, No. 14-10-00838-CV, 2011 WL 1419608, at *1 n.5 (Tex. App.—Houston [14th Dist.] Apr. 14, 2011, pet. denied) (mem. op.). Appellees drew a distinction between medical liability allegations asserting a total lack of consent and allegations asserting the failure to secure informed consent. *See Schaub v. Sanchez*, 229 S.W.3d 322, 323-24 (Tex. 2007) (per curiam) (distinguishing between lack of consent cases and lack of informed consent cases). Applying either standard, appellees argued, Dr. Naina's expert report was sufficient. The trial court overruled Dr. Arani's objections and denied his motion to dismiss.

Dr. Arani timely challenged the ruling in this accelerated interlocutory appeal, and we have jurisdiction.[3] Dr. Arani seeks either a rendition of judgment that appellees' case be dismissed or, alternatively, a remand to the trial court to afford appellees an opportunity to cure the allegedly deficient expert report.

---

[3] *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(9) ("A person may appeal from an interlocutory order . . . [that] denies all or part of the relief sought by a motion under Section 74.351(b)."); Tex. R. App. P. 28.1(a) (appeals from interlocutory orders are accelerated appeals).

**Analysis**

Dr. Arani raises three issues. First, he argues that Dr. Naina's report utilized an incorrect standard for informed consent cases because it failed to address whether a reasonable person would have refused treatment had all risks been fully disclosed. Second, Dr. Arani argues that Dr. Naina's report was based on an improper causation analysis. Third, Dr. Arani argues that Dr. Naina's opinion that Jackson would have refused to take Hydrea obviates appellees' informed consent claim, and further that the report fails to satisfy the necessary causal standard if appellees' claim is based on total lack of consent.

## A.    Applicable Law and Standard of Review

The TMLA requires a plaintiff asserting a health care liability claim[4] to file an expert report and serve it on each party not later than the 120th day after the petition is filed. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a). An expert report means "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6).

The expert report need not marshal all of the plaintiff's proof, but it must

---

[4] The TMLA defines a "health care liability claim" as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code § 74.001(a)(13). There is no dispute that appellees' claim against Dr. Arani is a health care liability claim.

4

include the expert's opinion on the three statutory elements: standard of care, breach, and causation. *See Am. Transitional Care Ctrs., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001); *Kelly v. Rendon*, 255 S.W.3d 665, 672 (Tex. App.—Houston [14th Dist.] 2008, no pet.). To pass muster, a plaintiff's expert report must "represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." Tex. Civ. Prac. & Rem. Code § 74.351(*l*). An expert report meeting the good faith standard must provide sufficient information to fulfill two statutory purposes: (1) inform the defendant of the specific conduct that the plaintiff has called into question; and (2) provide a basis for the trial court to conclude that the claims have merit. *See Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2010); *Palacios*, 46 S.W.3d at 879.

To meet these minimum standards, "'the expert must explain the basis of his statements to link his conclusions to the facts.'" *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam) (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)). The expert need not use "magical words" nor is the report held to the same standards as evidence offered on summary judgment or at trial. *Jelinek v. Casas*, 328 S.W.3d 526, 540 (Tex. 2010); *see also Kelly*, 255 S.W.3d at 672. But the expert must articulate more than bare conclusions or speculation. *Rice v. McLaren*, 554 S.W.3d 195, 200-01 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see also Palacios*, 46 S.W.3d at 879. A report that merely states the expert's conclusions as to the standard of care, breach, and causation does not fulfill the statutory purposes. *Scoresby*, 346 S.W.3d at 556 & n.61.

If the trial court concludes that the expert report does not constitute an objective good faith effort to comply with the statute, the court must, on the motion of the affected health care provider, dismiss the plaintiff's claim with prejudice. Tex. Civ. Prac. & Rem. Code § 74.351(b), (*l*); *Miller v. JSC Lake Highlands Operations,*

*LP*, 536 S.W.3d 510, 513 (Tex. 2017) (per curiam); *Bowie Mem'l Hosp.*, 79 S.W.3d at 51-52; *Gannon v. Wyche*, 321 S.W.3d 881, 885 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). If, on the other hand, the trial court concludes that the report represents an objective good faith effort to comply with the statute but is nevertheless deficient in some regard, the court may grant the plaintiff one thirty-day extension to attempt to cure the deficiency. *See* Tex. Civ. Prac. & Rem. Code § 74.351(c); *Scoresby*, 346 S.W.3d at 556-57; *Gannon*, 321 S.W.3d at 885.

We review a trial court's ruling on a motion to dismiss challenging the adequacy of an expert report for an abuse of discretion. *See Palacios*, 46 S.W.3d at 875; *Rice*, 554 S.W.3d at 200. A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to any guiding rules or principles. *Jelinek*, 328 S.W.3d at 539; *Rice*, 554 S.W.3d at 200. When reviewing a matter committed to the discretion of the trial court, a court of appeals may not substitute its judgment for that of the trial court. *See Bowie Mem'l Hosp*, 79 S.W.3d at 52. Because the statute focuses on what the report discusses, our review is constrained to the report's four corners. *Palacios*, 46 S.W.3d at 878.

## B. Appellees' Allegations

We start by clarifying the nature of appellees' allegations, which in turn informs our determination of the issues presented for our review. Health care liability claims grounded on allegations that a claimant's consent was not informed—an informed consent claim—are governed by Texas Civil Practice and Remedies Code sections 74.101-.107. *See Schaub*, 229 S.W.3d at 323. Under section 74.101, in a suit against a physician based on the physician's failure to disclose or adequately disclose the risks and hazards of medical care or a surgical procedure, the only theory on which recovery may be obtained is that of negligence in failing to disclose risks or hazards that could have influenced a reasonable person

6

in making the decision to give or withhold consent. *See* Tex. Civ. Prac. & Rem. Code § 74.101. In such a case, the plaintiff's expert must analyze whether a reasonable person could have been influenced to give or withhold consent by being informed of the risks or hazards that were not disclosed and whether the injury complained of was caused in fact by the undisclosed risk. *See, e.g.*, *Baylor Univ. Med. Ctr. v. Biggs*, 237 S.W.3d 909, 922-23 (Tex. App.—Dallas 2007, pet. denied).

Informed consent claims, however, differ materially from claims alleging that a patient gave no consent at all for the treatment. *See Schaub*, 229 S.W.3d at 323-24; *McGraw-Wall*, 2011 WL 1419608, at *1 n.5. "Performing a procedure without a patient's consent is not the same as performing it without her *informed* consent." *Peters v. Byrne*, No. 05-17-00004-CV, 2018 WL 1790059, at *2 (Tex. App.—Dallas Apr. 16, 2018, pet. filed) (mem. op.) (citing *Schaub*, 229 S.W.3d at 324) (emphasis in original). Health care liability claims based on an allegation that medical care or a surgical procedure was performed without consent sound in medical battery or negligence. *Schaub*, 229 S.W.3d at 324; *Gravis v. Physicians & Surgeons Hosp.*, 427 S.W.2d 310, 311 (Tex. 1968); *Ranelle v. Beavers*, No. 02-08-00437-CV, 2009 WL 1176445, at *3 (Tex. App.—Fort Worth Apr. 30, 2009, no pet.) (mem. op.).

For the most part, Dr. Arani characterizes this case as an informed consent claim, and he devotes the majority of his appellate arguments to the ways in which he contends Dr. Naina's report fails the causation standard for informed consent cases. Appellees dispute that point but also argue that their allegations include medical battery claims, which are not governed by the informed consent line of cases.[5] We agree with appellees that their live pleading sufficiently pleads a claim for medical battery because it includes allegations that Dr. Arani administered

---

[5] Appellees raised this argument in response to Dr. Arani's motion to dismiss in the trial court.

Hydrea without Jackson's consent.[6]   Additionally, Dr. Naina's report contains assertions supporting a medical battery claim.  For example, as Dr. Naina stated, medical notes indicated that neither Jackson nor her family were informed that Jackson was diagnosed with and being treated for leukemia before Hydrea was administered, and Jackson previously indicated that she did not consent to any chemotherapeutic agents if she was diagnosed with cancer.[7]

Accordingly, we are not constrained to apply the informed consent standard stated in *Biggs* and related cases.  *See McGraw-Wall*, 2011 WL 1419608, at *1 n.5 (construing allegation as "one of no consent at all" and declining to apply informed consent standard); *Ranelle*, 2009 WL 1176445, at *3-4 (analyzing expert's causation opinion as to medical battery claim).  If appellees' expert report is sufficient as to the medical battery claim, then we can affirm the denial of Dr. Arani's motion without addressing the report's sufficiency as to any other claims.  *See Baylor Coll. of Med. v. Pokluda*, 283 S.W.3d 110, 123 n.3 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

## C.   Dr. Naina's Opinions as to Causation

In his third issue, Dr. Arani argues that Dr. Naina's opinion that Jackson would have refused to consent to administration of Hydrea under any circumstance

---

[6] To be sure, appellees' petition includes language reasonably construed as asserting an informed consent theory, such as that Dr. Arani was "negligent in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent."  But we do not agree with Dr. Arani's unstated assumption that appellees' *only* pleaded theory of liability is a lack of informed consent.

[7] Dr. Arani disputes the consent issue.  According to Dr. Arani, "[i]t is undisputed that Mrs. Jackson signed a general consent form."  However, Dr. Arani provides no record citation for this assertion, and we see no indication in the expert's report that Jackson signed a general consent form.  The only affirmative consent mentioned in Dr. Naina's report is a reference that Jackson signed a "[c]onsent form for bone marrow biopsy."  We of course express no opinion on the truth of either side's position on consent; we are simply limited, in our sufficiency analysis of Dr. Naina's report, to the four corners of the report itself.  *Bowie Mem'l Hosp.*, 79 S.W.3d at 52.

"removes the claim from the ambit of informed consent and places it more accurately in the realm of battery or negligence," and, as to such a claim, Dr. Naina's report is "no report at all" because it does not "articulate negligence, battery, or some other cognizable" health care liability claim. As discussed, we agree that appellees' claim is not predicated solely on a lack of informed consent but is at least partially predicated on an allegation that Jackson never consented to receive Hydrea. But, as also explained, we disagree with Dr. Arani that Dr. Naina's report fails to address a medical battery claim. *See McGraw-Wall*, 2011 WL 1419608, at *2-3. As to that claim, we must consider the substance of Dr. Naina's opinions and conclusions to determine whether the report is sufficient on the challenged element of causation. *See* Tex. Civ. Prac. & Rem. Code § 74.351(r)(6) (expert report must include, *inter alia*, the causal relationship between the physician's failure to meet the standard of care and the injury, harm, or damages claimed). We address this issue first because it is dispositive.

Although the plaintiff in a medical negligence case is not required to prove proximate cause with her expert report, the report must show that the expert is of the opinion she can do so regarding both foreseeability and cause-in-fact. *See Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017); *Rice*, 554 S.W.3d at 201. The expert must explain the basis of his or her conclusions, showing how and why a breach of the standard of care caused the injury and linking his or her ultimate conclusions to the facts of the particular case. *See Zamarripa*, 526 S.W.3d at 460 ("the expert report must make a good-faith effort to explain, factually, how proximate cause is going to be proven"); *Jelinek*, 328 S.W.3d at 539; *Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *Cornejo v. Hilgers*, 446 S.W.3d 113, 123 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). We determine whether an expert report is sufficient under section 74.351 by considering the opinions in the

9

context of the entire report, rather than taking statements in isolation. *See Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 144 (Tex. 2015) (per curiam).

A report may be sufficient if it states a chain of events that begin with a health care provider's negligence and end in a personal injury. *See Patel v. Williams*, 237 S.W.3d 901, 905-06 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see also Engh v. Reardon*, No. 01-09-00017-CV, 2010 WL 4484022, at *10 (Tex. App.—Houston [1st Dist.] Nov. 10, 2010, no pet.) (mem. op.). In *Patel*, we held that the trial court did not abuse its discretion in determining the report was not conclusory or speculative concerning causation. *Patel*, 237 S.W.3d at 905-06.

Dr. Naina's report states, in relevant part:

> Dr. Arani ordered the administration of oral chemotherapy to [Jackson], who did not give, and who refused to give, informed consent to oral chemotherapy. Additionally, as a result of the nursing staff of Tomball Hospital's failure to confirm that informed consent had not been obtained, the nursing staff of Tomball Hospital administered the initial dosage of oral chemotherapy to Ms. Jackson.

> Within reasonable medical probability, the first administration of Hydrea destroyed Ms. Jackson's white blood cells. Thereafter, the release of cellular contents of the dying white blood cells into the blood stream caused severe metabolic abnormalities known as tumor lysis syndrome. Ms. Jackson's dead white blood cells were then delivered to her kidneys via the circulatory system, in order to be filtered out of her body. However, due to the high amount of dead white blood cells in her system, and the metabolic changes in her blood (tumor lysis syndrome) which led to the release of potassium from the dead cells leading to complete heart block and kidney failure.

> Once Ms. Jackson's kidneys shut down, her blood became overly acidic which caused damage to her other internal organs, including her heart and brain. As a result, her body shut down and Ms. Jackson died.

> Had Dr. Arani properly attempted to obtain Ms. Jackson's informed consent to administer Hydrea while she was an in-patient at Tomball Hospital, it is my opinion, based on my review of the records, that Ms. Jackson would have refused to consent to the oral chemotherapy

10

treatment of Hydrea, as ordered by Arani and administered by the nursing staff of Tomball Hospital, and would have been discharged home, and, in reasonable medical probability, Ms. Jackson would not have died on July 2, 2014.

Had Hydrea not been administered by the nursing staff of Tomball Hospital, in the absence of informed consent, in reasonable medical probability, Ms. Jackson would not have died on July 2, 2014.

The trial court could have reasonably found that Dr. Naina's expert report constituted a good-faith effort to comply with the statutory requirements, specifically the challenged element of causation. Dr. Naina opines that the administration of Hydrea destroyed Jackson's white blood cells, which then infiltrated her blood stream and kidneys, causing tumor lysis syndrome, heart block, kidney failure, and Jackson's ultimate death. Dr. Naina states that Jackson previously declined consent to receive chemotherapeutic agents and, had Dr. Arani properly attempted to obtain Jackson's consent to administration of Hydrea, Jackson would have refused to consent to the treatment, would have been discharged, and would not have died on July 2, 2014. Thus, the challenged expert report informs Dr. Arani of the specific conduct that appellees challenge (administering Hydrea without Jackson's consent) and provides sufficient information regarding the causal link between Dr. Arani's breach and Jackson's injury to allow the trial court to reasonably conclude that appellees' claim has merit. *See McGraw-Wall*, 2011 WL 1419608, at *2-3; *see also Scoresby*, 346 S.W.3d at 553-54; *Palacios*, 46 S.W.3d at 879; *Ranelle*, 2009 WL 1176445, at *3-4 (holding expert report sufficient as to causation in medical battery claim). We therefore hold that the trial court did not abuse its discretion by denying Dr. Arani's motion to dismiss.

We overrule Dr. Arani's third issue.

## D.    Dr. Arani's Remaining Issues

We have concluded that Dr. Naina's expert report satisfies the TMLA's

11

causation requirement, insofar as appellees' health care liability claim is predicated on Dr. Arani's alleged failure to obtain consent before administering Hydrea to Jackson. Therefore, dismissal of appellees' suit against Dr. Arani is not warranted, regardless whether Dr. Naina's report is also sufficient with respect to any informed-consent allegation. *See Pokluda*, 283 S.W.3d at 123 n.3. Thus, we need not address Dr. Arani's remaining arguments, which are premised on an application of the informed-consent standard.[8] *See id.*

## Conclusion

We overrule Dr. Arani's third issue, and do not reach his first or second issue on appeal. We affirm the trial court's order denying Dr. Arani's motion to dismiss.


/s/     Kevin Jewell
        Justice


Panel consists of Justices Donovan, Wise, and Jewell.

---

[8] In his first issue, Dr. Arani argues that that the threshold inquiry for an informed-consent case is whether a reasonable person would have refused consent, not whether a reasonable person could have been influenced to give or withhold consent upon disclosure of the pertinent risks, and that Dr. Naina improperly utilized this latter standard. In his second issue, Dr. Arani argues that Dr. Naina's report did not adequately illustrate a causal relationship between a lack of informed consent and Jackson's death.