**Opinion issued July 22, 2021**



In The

# Court of Appeals

### For The

# First District of Texas

————————————

### NO. 01-20-00752-CV

————————————

### NIKKO COSMETIC SURGERY CENTER, INC. AND ANTHONY NIKKO, M.D., Appellants

### V.

### TENILLE CARROLL, Appellee

———

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-22869**

———

### MEMORANDUM OPINION

In this interlocutory appeal,[1] appellants, Nikko Cosmetic Surgery Center, Inc.

(the "Center") and Anthony Nikko, M.D. ("Dr. Nikko"), challenge the trial court's

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9).

order denying their motion to dismiss the health-care-liability claim[2] brought against them by appellee, Tenille Carroll. In two issues, the Center and Dr. Nikko contend that the trial court abused its discretion in denying their motion to dismiss Carroll's claim because her medical expert's report[3] is inadequate with respect to the standard of care, breach, and causation.

We affirm.

## Background

In her petition, as amended, Carroll alleges that, in April 2018, she visited the Center for the purpose of having her "aged" breast implants removed and for a breast lift. She executed a consent form for a mastopexy procedure (breast lift). Subsequently, however, Dr. Nikko actually performed a breast reduction procedure on her. He left her old implants in place and removed a "significant" amount of her natural breast tissue. In addition, she alleges, Nikko removed a disproportionate amount of tissue from each breast, leaving her with asymmetrical breasts.

Carroll sued Dr. Nikko and the Center for negligence, alleging that they failed to follow the agreed surgical plan and failed to perform a mastopexy. Further, the unauthorized breast reduction left her with asymmetrical breasts. She asserts that Nikko failed to perform treatment as authorized and in a proper manner. And, the

---

[2]   *See id.* § 74.001(a)(13).

[3]   *See id.* § 74.351(a).

2

Center failed to implement appropriate policies, procedures, and supervision to assure that only authorized procedures were performed and that deviations did not occur. She asserts that she went to the Center seeking an "implant-free life." Instead, the unauthorized removal of her natural breast tissue relegated her to a life with implants, requiring periodic surgical replacement, and left her disfigured. She seeks damages for past and future medical expenses, pain and suffering, mental anguish, and disfigurement.

To support her claims, Carroll filed and served upon Dr. Nikko and the Center a medical expert report authored by Sean Boutros, M.D., F.A.C.S. In his report and curriculum vitae, Dr. Boutros states that he is a board-certified plastic surgeon. He is licensed to practice in the State of Texas and had, at the time of his report, practiced plastic surgery in the Houston area for approximately 15 years. He has authored numerous publications and textbooks. Boutros notes that Dr. Nikko is a dermatologist. And, Nikko is not certified by any American Board of Medical Specialties approved surgical board and lacks any surgical training "in an ACGMG approved surgical program."

Dr. Boutros opines, based on his review of Carroll's "operative reports and consents that were signed for the procedure," that she "did not get the procedures that she agreed to." She went to Nikko to have her breast implants removed. She signed a consent for a mastopexy (breast lift). She underwent a surgery in which,

3

"according to the operative reports, 505 g was removed from the right breast and 655 g [was] removed from the left breast." Carroll's implants were not removed. Thus, it was "clear that [she] underwent a breast reduction and an extremely asymmetric breast reduction at that."

Dr. Boutros states that, first, Dr. Nikko breached the standard of care by performing an unauthorized surgery on Carroll. She signed a consent for a mastopexy, a procedure that does not change the size of the breast but is "simply a movement of the tissue with removal of skin." However, Nikko actually performed a breast reduction, which was "not the procedure that the patient agreed to." Further, Boutros states, on examination, Carroll's "left breast is approximately 150 g smaller than the right resulting directly from this asymmetric reduction of tissue." He noted that this "asymmetric reduction of tissue was known in the operating room and, with no preoperative documentation of such a severe symmetry, should not have been left." He opines that correcting Nikko's asymmetric reduction of tissue "will require [a] significant amount of surgery." Namely, replacing Carroll's missing breast tissue will require a microvascular transfer from another part of her body.

Dr. Nikko and the Center moved to dismiss Carroll's health care liability claim on the ground that Dr. Boutros's report failed to adequately address the standard of care, breach, and causation.

4

In her response to the motion to dismiss, Carroll asserted that her expert report adequately addressed the challenged elements. Namely, Dr. Boutros opined that Dr. Nikko and the Center breached the standard of care by performing an unauthorized breast reduction on her. In addition, Boutros opined that Nikko breached the standard of care by "inexplicably removing 150g of additional breast tissue from [her] left breast than from her right." And, he opined, these breaches of the standard of care foreseeably caused Carroll to have smaller and asymmetrical breasts.

Carroll noted that, although Dr. Nikko and the Center challenged her expert report on the ground that Dr. Boutros had failed to specify the operative technique that Nikko should have employed to prevent the alleged asymmetry, Nikko and the Center had failed to maintain Carroll's surgical records containing the operative technique that Nikko had utilized. As such, she asserted, Nikko and the Center sought to benefit from their own malfeasance in losing the pertinent evidence.

After a hearing, the trial court denied Dr. Nikko and the Center's motion to dismiss Carroll's claim.

## Expert Report

In their first and second issues, Dr. Nikko and the Center argue that the trial court erred in denying their motion to dismiss Carroll's claim because Dr. Boutros's report does not adequately address the standard of care, breach, and causation.

**A.     Standard of Review and Overarching Legal Principles**

We review a trial court's decision on a motion to dismiss a health-care-liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010).  When reviewing matters committed to a trial court's discretion, we may not substitute our own judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).  A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Harris Cty. Hosp. Dist. v. Garrett*, 232 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  However, a trial court has no discretion in determining what the law is or in applying the law to the facts. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

A health-care-liability claimant must timely provide each defendant health care provider with an expert report. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a).  An expert report means a "written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider

failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *See id.* § 74.351(r)(6). If a defendant files a motion challenging the adequacy of a claimant's expert report, the trial court must grant the motion only if it appears, after a hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report or is not sufficiently specific to provide a basis for the trial court to conclude that the claims have merit. *Id*. § 74.351(l); *Scoresby v. Santillan*, 346 S.W.3d 546, 555–56 (Tex. 2011).

Although the report need not marshal all the plaintiff's proof, it must include the expert's opinions on the statutory elements, i.e., the standard of care, breach, and causation. *See Palacios*, 46 S.W.3d at 878–79. To be considered a good-faith effort, the report must inform the defendant of the specific conduct that the plaintiff calls into question and provide a basis for the trial court to conclude that the claims have merit. *Id*. at 879. A report that merely states the expert's conclusions does not fulfill these purposes. *Id*. The expert must explain the basis of his statements and link his conclusions to the facts. *Wright*, 79 S.W.3d at 52.

In assessing the sufficiency of a report, a trial court may not draw inferences, but instead must rely exclusively on the information contained within the four corners of the report and curriculum vitae. *See In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 463 & n.14 (Tex. 2008); *Wright*, 79 S.W.3d at 53. However, section

74.351 does not prohibit experts from making inferences based on medical history. *Granbury Minor Emergency Clinic v. Thiel*, 296 S.W.3d 261, 265 (Tex. App.—Fort Worth 2009, no pet.). Whether an expert's factual inferences in the report are accurate is an issue for trial and should not be considered when ruling on a section 74.351 motion to dismiss. *Hood v. Kutcher*, No. 01-12-00363-CV, 2012 WL 4465357, at *4 (Tex. App.—Houston [1st Dist.] Sept. 27, 2012, no pet.) (mem. op.); *Gannon v. Wyche*, 321 S.W.3d 881, 892 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

**B.      Sufficiency of the Report**

   1.      *Standard of Care and Breach*

Dr. Nikko and the Center first argue that the expert report does not constitute a good-faith effort to comply with the standard of care and breach requirements because the report is vague and conclusory and does not state what Nikko and the Center should have done differently. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6).

The standard of care is defined by what an ordinarily prudent healthcare provider would have done under the same or similar circumstances. *Palacios*, 46 S.W.3d at 880. Identifying the standard of care in a health care liability claim is critical: whether a defendant breached its duty to a patient cannot be determined absent specific information about what the defendant should have done differently.

*Id.* Again, while a "fair summary" is something less than a full statement of the applicable standard of care and how it was breached, the report must set out what care was expected, but not given. *Id.* A report that wholly fails to set out the standard of care, or does so in a conclusory manner, is deficient and does not constitute a good-faith effort to meet the statute's requirements. *See id.* at 879.

Here, Carroll alleged that Dr. Nikko and the Center breached the standard of care by (1) failing to follow the agreed treatment plan and instead performing an unauthorized surgery and (2) leaving her implants in place and instead disproportionately removing her natural tissue, leaving her disfigured.

We must clarify the nature of Carroll's first allegation, which in turn informs our determination of the issue presented for our review. *See Arani v. Fisher*, No. 14-18-00117-CV, 2018 WL 5289932, at *3 (Tex. App.—Houston [14th Dist.] Oct. 25, 2018, no pet.) (mem. op.). A health-care-liability claim grounded on an allegation that a claimant's consent was not informed constitutes an "informed-consent claim," which is governed by Texas Civil Practice and Remedies Code chapter 74. *Id.* Lack of informed consent is a subspecies of negligence based on a failure to disclose the risks or hazards of a procedure. *Schaub v. Sanchez*, 229 S.W.3d 322, 323 (Tex. 2007). In a suit against a physician or health care provider based on a failure to disclose or adequately disclose the risks and hazards of medical care or a surgical procedure, the only theory upon which recovery may be obtained

is that of negligence in failing to disclose risks or hazards that could have influenced a reasonable person in making the decision to give or withhold consent. TEX. CIV. PRAC. & REM. CODE § 74.101. The plaintiff's expert must address whether a reasonable person could have been influenced to give or withhold consent by being informed of the risks or hazards that were not disclosed and whether the injury complained of was caused in fact by the undisclosed risk. *See Baylor Univ. Med. Ctr. v. Biggs*, 237 S.W.3d 909, 922–23 (Tex. App.—Dallas 2007, pet. denied).

Informed-consent claims differ materially, however, from claims alleging that a patient gave no consent at all for the treatment. *Arani*, 2018 WL 5289932, at *4. "[A]n action for total lack of consent sounds in battery or negligence . . . not informed consent." *Schaub*, 229 S.W.3d at 324; *see also Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005) (stating that treatment without patient consent gives rise to cause of action for battery); *Miller v. HCA, Inc*., 118 S.W.3d 758, 767 (Tex. 2003) ("[T]he general rule in Texas is that a physician who provides treatment without consent commits a battery."). "Performing a procedure without a patient's consent is not the same as performing it without her *informed* consent." *Peters v. Byrne*, No. 05-17-00004-CV, 2018 WL 1790059, at *2 (Tex. App.—Dallas Apr. 16, 2018, pet. denied) (mem. op.). Here, Carroll's claim that Dr. Nikko and the Center performed a breast reduction surgery on her without her consent constitutes a claim for battery or negligence. Thus, we do not employ an informed-consent analysis.

10

Turning to Dr. Boutros's report with respect to Carroll's lack-of-consent claim, Boutros states that Carroll told Dr. Nikko that she wanted her breast implants removed and a breast lift. Boutros notes that Carroll was presented with, and executed, written consent for a mastopexy procedure (breast lift), which Boutros explained is "simply a movement of the tissue with removal of skin" and "does not change the size of the breast." He states, however, that "[i]t is clear that she underwent a breast reduction," and "[t]his is not the procedure that the patient agreed to." Boutros states that Carroll underwent a surgery in which, "according to the operative reports, 505 g was removed from the right breast and 655 g [was] removed from the left breast." Carroll's implants were not removed. Rather, it was "clear that [she] underwent a breast reduction and an extremely asymmetric breast reduction at that." Boutros notes that, on examination, Carroll's "left breast is approximately 150 g smaller than the right resulting directly from this asymmetric reduction of tissue." Boutros opines that performing an unauthorized surgery on Carroll constituted a "significant breach of the standard of care."

We conclude that the trial court reasonably concluded that Dr. Boutros's report represents a good-faith effort to inform Dr. Nikko and the Center of the specific conduct that Carroll calls into question, and the care that was expected but not given, and provides a basis for the trial court to conclude that the claim has merit. *See Palacios*, 46 S.W.3d at 879–80; *see, e.g.*, *Kelly Ryan Cook, P.A. v. Spears*, 275

11

S.W.3d 577, 585–86 (Tex. App.—Dallas 2008, no pet.) (holding expert report opining that surgeon breached standard by failing to verify agreed procedure prior to performing incorrect surgery was not conclusory and represented good-faith effort to comply with statute). Accordingly, we hold that the trial court did not err in denying the motion to dismiss Carroll's health-care-liability claim on the ground that the expert report is inadequate with respect to the standard of care and breach.

We overrule Dr. Nikko's and the Center's first issue.

2. *Causation*

In their second issue, Dr. Nikko and the Center assert that Dr. Boutros's expert report is insufficient as to the element of causation. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6). They assert that Boutros's opinions are vague and conclusory in that he "does not explain how or why his alleged breaches caused [Carroll] to suffer an injury," and he "never identifies that the reduction is an injury nor explains how the breast reduction injured" her.

A causal relationship is established by proof that the negligent act or omission constituted a substantial factor in bringing about the harm and absent the act or omission, the harm would not have occurred. *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.). Again, however, an expert report need not marshal all of the plaintiff's proof necessary to establish causation at trial. *Wright*, 79 S.W.3d at 52. Rather, the report must provide

12

a fair summary of the expert's opinions regarding the causal relationship between the failure of the health care provider to provide care in accordance with the pertinent standard of care and the injury, harm, or damages claimed. *Id.* at 52–53. The expert must simply provide some basis that a defendant's act or omission proximately caused injury. *Id.* at 53. And, the expert must explain the basis of his statements and link his conclusions to the facts. *Id.* at 52.

Here, in setting out the causal connection between the alleged breaches of the standard of care and the harm, Dr. Boutros opines, based on his review of Carroll's "operative reports and consents that were signed for the procedure," that she went to Dr. Nikko and the Center to have her breast implants removed and a mastopexy (breast lift), which Boutros explained is a procedure that does not change the size of the breast but is "simply a movement of the tissue with removal of skin." However, Carroll underwent a breast reduction, in which, "according to the operative reports, 505 g was removed from the right breast and 655 g [was] removed from the left breast." And, Carroll's implants were not removed. Boutros states that, on examination, her "left breast is approximately 150 g smaller than the right resulting directly from this asymmetric reduction of tissue," and he notes that this "asymmetric reduction of tissue was known in the operating room and, with no preoperative documentation of such a severe symmetry, should not have been left." He opines that correcting Nikko's asymmetric reduction of tissue "will require [a]

13

significant amount of surgery." Namely, replacing Carroll's missing breast tissue will require a microvascular transfer from another part of her body.

Thus, Dr. Boutros opines that Dr. Nikko's and the Center's failure to follow the agreed treatment plan and instead performing an unauthorized breast reduction surgery on Carroll resulted in her having breast implants that were not removed, loss of natural breast tissue, and "severe asymmetry" requiring "significant surgical intervention." Thus, according to Boutros, Carroll was injured by not receiving the surgery she authorized, by being subjected to a surgery that she did not, and by suffering permanent disfigurement from the unauthorized surgery.

In *Johnson v. Whitehurst*, this Court noted:

> [A] doctor must secure the authority or consent of his patient in order to legally perform medical procedures. . . . This duty is based on the right of every normal adult to determine what shall be done to his own body.

652 S.W.2d 441, 444 (Tex. App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). Thus, a surgeon may be found liable in damages even for the skillful performance of an unauthorized surgery. *Urb. v. Spohn Hosp.*, 869 S.W.2d 450, 452 (Tex. App.—Corpus Christi 1993, writ denied) (noting success of surgery was immaterial).

In *Amjadi v. Mandujano*, this Court affirmed a trial court's finding that the expert report adequately reflected a causal relationship between the defendant's failure to adhere to the standard of care in performing the surgical procedures at issue and the patient's resulting injuries. No. 01-13-00479-CV, 2014 WL 554678, at *6

14

(Tex. App.—Houston [1st Dist.] Feb. 11, 2014, no pet.) (mem. op.). There, the expert opined that the standard of care applicable to a surgeon performing a mastopexy is to place the breasts symmetrically and that the defendant surgeon's failure to adhere to that standard resulted in the patient being left with asymmetric breasts. *Id.* at *4–5. Although the expert did not use the term "causation," we noted that such "magic words" were not required. *Id.* at *6. Rather, the expert was simply required to provide "some basis" that an act or omission by the surgeon had proximately caused the patient's injuries. *Id.* We held that the expert report represented a good-faith effort to inform the surgeon of the causal relationship between his failure to provide care in accordance with the standard of care and the claimed injury. *Id.*

Here, like the expert in *Amjadi*, Dr. Boutros, in his report, links his conclusions to the facts of the case, that is, he connects Dr. Nikko's and the Center's breaches of the standard of care in failing to follow the agreed treatment plan and instead performing an unauthorized breast reduction surgery on Carroll to her injuries and damages, i.e., the failure to remove her breast implants, the loss of her natural breast tissue, and her "severe asymmetry" requiring "significant surgical intervention." Thus, the report provides some basis that the complained of acts and omissions proximately caused Carroll's injuries and damages. *See Wright*, 79 S.W.3d at 53.

15

In support of their assertion that Dr. Boutros's report is conclusory with respect to causation, Dr. Nikko and the Center cite this Court's opinion in *Northwest EMS Consultants, P.A. v. Guillory*, No. 01-19-00668-CV, 2020 WL 4516872 (Tex. App.—Houston [1st Dist.] Aug. 6, 2020, pet. denied) (mem. op.). There, an emergency medical services provider, while performing a transfer from an ambulance into a hospital, dropped the patient onto the ground. *Id.* at *1. The patient sued, alleging spine injuries as a result of the fall. *Id.* As to causation, the plaintiff's expert opined that it was within a reasonable medical probability that the incident, and not the normal aging process, had caused her disc herniations because she was forty-one years old at the time of the fall and "was a young healthy female with no history of trauma, musculoskeletal pain complaints, or radiculopathy symptoms prior to the fall she suffered." *Id.* at *11. We noted that the expert had offered no more than a bare assertion that the alleged breach of the applicable standard of care had resulted in the patient's injuries, and he had made no attempt to explain the basis of his statements or to link his conclusions to specific facts. *Id.* at *12. We held that the expert report did not adequately inform the provider of the causal relationship between its failure to provide care in accordance with the applicable standard of care and the claimed injuries. *Id.* Here, Dr. Boutros, as discussed above and unlike in *Guillory*, links his conclusions to the facts of this case.

16

We conclude that the trial court reasonably concluded that Dr. Boutros's report represents a good-faith effort to inform Dr. Nikko and the Center of the causal relationship between the failure to provide care in accordance with the pertinent standards of care and the injuries and damages claimed. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(l), (r)(6); *Scoresby*, 346 S.W.3d at 555–56; *Palacios*, 46 S.W.3d at 879; *Amjadi*, 2014 WL 554678, at *6. Accordingly, we hold that the trial court did not err in denying the motion to dismiss Carroll's health care liability claim on the ground that the expert report is inadequate with respect to causation.

We overrule Dr. Nikko's and the Center's second issue.

Having concluded that Carroll's health care liability claim contains at least one viable liability theory, as evidenced by an expert report meeting the statutory requirements, we do not reach whether her expert report is sufficient as to her other liability theories. *See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013); *Arani*, 2018 WL 5289932, at *4 ("If appellees' expert report is sufficient as to the medical battery claim, then we can affirm the denial of Dr. Arani's motion without addressing the report's sufficiency as to any other claims."); *SCC Partners, Inc. v. Ince*, 496 S.W.3d 111, 115 (Tex. App.—Fort Worth 2016, pet. dism'd) ("[I]f at least one alleged claim, theory, or cause of action in a health care liability suit has expert support, then the legislative intent of deterring frivolous suits has been satisfied.").

## Conclusion

We affirm the trial court's interlocutory order denying the motion to dismiss Carroll's health-care-liability claim.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Landau and Countiss.